UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| LINDA PRICE NJU, | : | Case No. 3:16-cv-518 |
| --- | --- | --- |
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| NANCY A. BERRYHILL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# DECISION AND ENTRY

## I.  Introduction

Plaintiff Linda Price Nju applied for period of disability and Disability Insurance Benefits on July 7, 2011 and for Supplemental Security Income on March 13, 2012. She asserted that she has been under a benefits-qualifying disability since April 4, 2008. Administrative Law Judge (ALJ) Irma J. Flottman concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The Appeals Council denied Plaintiff's request for review, and she filed a previous action in United States District Court for the Southern District of Ohio. *See Price Nju v. Comm'r of Soc. Sec.*, 3:14-cv-455, 2016 WL 74998 (S.D. Ohio Jan. 7, 2016) (Report & Recommendation), *adopted* 2016 WL 319869 (S.D. Ohio Jan. 26, 2016). The Court vacated the Commissioner's decision and remanded the case pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings. *Id.* at *2. Upon remand, on

December 22, 2014, ALJ Mark Hockensmith found that Plaintiff was not under a disability.

Plaintiff challenges the ALJ's non-disability decision in the present case. The parties agree that a remand to the Social Security Administration is warranted. They disagree, however, on whether the remand should be for an award of benefits in Plaintiff's favor or whether further administrative proceedings are needed. The case is before the Court upon the Commissioner's Motion to Remand (Doc. #12), Plaintiff's Response (Doc. #13), and the administrative record (Doc. #6).

## II.     Standard of Review

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 410 (6th Cir. 2009); *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). "Generally, benefits may be awarded immediately 'only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.'" *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 865 (6th Cir. 2011) (quoting, in part, *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). A judicial award of benefits is proper "only where the proof of disability is strong, and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative

evidence, or where the proof of disability is overwhelming." *Id.* (citing *Faucher,* 17 F.3d at 176; *Felisky,* 35 F.3d at 1041; *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir.1985)).

### III. Discussion

The Commissioner seeks remand of this case for further administrative proceedings and a new decision. According to the Commissioner, "Upon receipt of the Court's order, the Appeals Council will instruct the Administrative Law Judge to reevaluate the opinions of the state agency reviewing psychologists as previously ordered by the Court, develop the administrative record as necessary to determine whether Plaintiff is disabled within the meaning of the Social Security Act, and issue a new decision." (Doc. #12, *PageID* #2610).

Review of the evidence of record, including Plaintiff's medical history and the medical-source opinions, reveals the presence of strong evidence that Plaintiff was under a benefits-qualifying disability. The strong evidence includes opinions presented by Plaintiff's treating medical source, Dr. Patel.

Dr. Patel completed a mental impairment questionnaire on February 4, 2013. (Doc. #6, *PageID* #1480). He diagnosed Bipolar I Disorder, recurrent, mixed, and alcohol and cocaine dependence in full sustained remission. *Id.* He identified Plaintiff's signs and symptoms: sleep disturbance, mood disturbances, emotional lability, recurrent panic attacks, anhedonia or pervasive loss of interests, difficulty thinking or concentrating, two suicide attempts, decreased energy, racing thoughts, generalized persistent anxiety, and hostility/irritability. *Id.* at 1480-81. Plaintiff's treatment includes individual therapy, case management, and several medications—Invega, Cymbalta,

3

Wellbutrin SR, Trazadone, and Neurontin. *Id.* at 1481. Despite treatment, her prognosis is guarded. *Id.*

Dr. Patel opined that Plaintiff's psychiatric condition exacerbates her experience of pain and can lower her pain threshold. *Id.* Additionally, he indicated Plaintiff has a moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; marked deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner; and marked episodes of deterioration or decompensation in work. *Id.* at 1482. On average, Plaintiff would be absent from work more than three times a month as a result of her impairments and treatment. *Id.* Dr. Patel concluded, "Due to chronic anxiety, mood lability, trouble being around people and back pain, she is unlikely to work 40 hours/week." *Id.*

A review of ALJ Hockensmith's decision reveals many errors and the strength of Dr. Patel's opinions. ALJ Hockensmith acknowledges that this "Court remanded the claimant's applications for more thorough evaluation of medical source opinion evidence." (Doc. #6, *PageID* #117) (internal citation omitted). He then discusses some of the problems raised by the Court. The ALJ begins, "In addressing the issues raised by the Court in its remand order, it is important to recognize that at the time that he rendered his opinion evidence, Dr. Patel had, by his own estimate, treated the claimant only a few times ('every 2-3 months' over the course of one year)." *Id.* at 126. Although the length of treatment relationship and frequency of examination are factors to be considered, it is also "important to recognize" that "these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight."

4

*Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)).  Further, Dr. Patel saw Plaintiff six times between February 7, 2012 and February 4, 2013—an average of every two months.  (Doc. #6, *PageID* #s 1402, 1425, 1445, 1462, 2438, 2540).  The ALJ further omits that Plaintiff—in addition to treatment with Dr. Patel—attended individual therapy at Daymont.  Specifically, during that same time period, Plaintiff saw a counselor fourteen times.  *Id.* at 2418-516.

ALJ Hockensmith added, "It is interesting to note that on the date he completed his assessment of the claimant's mental condition (February 4, 2013), the evidence shows that his most recent prior contact with the claimant had been on October 15, 2012 - more than three months earlier.  Hence, the claimant was not being treated very often by Dr. Patel."  *Id.* at 127 (citation omitted).  The ALJ, however, is incorrect.  Dr. Patel saw Plaintiff on February 4, 2013—the very same day he completed his evaluation.

ALJ Hockensmith also relies on many of ALJ Flottman's reasons for rejecting Dr. Patel's opinion—the same reasons that this Court previously rejected.  For example, he found that ALJ Flottman properly rejected Dr. Patel's opinions because of Plaintiff's "moderate" Global Assessment of Functioning scores:  "it cannot be denied that assigned GAF scores consistently align with 'moderate' symptoms - even the GAF score assigned the claimant by Dr. Patel."  *Id.* at 127 (citation omitted).  But, at the time of ALJ Hockensmith's decision in September 2016, the use of GAF was no longer recognized by the American Psychiatric Association as a valid psychiatric measurement tool.  *See* Diagnostic and Statistical Manual of Mental Disorders at p. 16 (Am. Psych. Ass'n, 5th ed. 2013) (DSM-V) (eliminating GAF upon the recommendation "that the GAF be

5

dropped from [DSM-V] for several reasons, including its conceptual lack of clarity ... and questionable psychometrics in routine practice"). Consequently, Plaintiff's GAF ratings were not reasonably probative evidence in conflict with Dr. Patel's opinions, *see Barnett v. Colvin*, No. 3:14cv003, 2015 WL 471243, at *11 (S.D. Ohio Feb. 4, 2015)[1] (quoting *Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 684 (6th Cir. 2011) ("'A GAF score is thus not dispositive of anything in and of itself ….'")).[2]

Further, ALJ Hockensmith found, "the Court questioned the prior administrative law judge's finding that Dr. Patel, a psychiatrist, based his conclusion that the claimant would be 'unlikely to work' 40 hours per week on factors outside his realm of expertise- to wit, 'back pain.'" (Doc. #6, *PageID* #126) (citations omitted). And he is correct, the Court found that ALJ Flottman "overemphasized that Dr. Patel, a psychiatrist, referred to Plaintiff's back pain as a reason to conclude she was unlikely to work 40 hours per week. The ALJ rejected this conclusion as 'purely speculative' because Dr. Patel treated Plaintiff's mental impairments not her physical impairments." *Price Nju*, 2016 WL 74998, at *7. The Court rejected ALJ Flottman's conclusion: "the ALJ's finding that he

---

[1] R&R adopted, 2015 WL 777646 (S.D. Ohio Feb. 24, 2015).
[2] In a 2016 case, *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 836 (6th Cir. 2016), the Sixth Circuit continued to acknowledge the GAF's usefulness to ALJs. *Miller*, however, relied on a case from 2012, *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002), which was decided well before the DSM V dropped the GAF scale in 2015. Additionally, *Miller* evaluated an ALJ's decision in 2011 before the DSM V eliminated the GAF scale in 2015. And, *Miller* is silent about whether ALJs may use GAF scores to discount a treating psychiatrist's opinions after DSM V dropped the GAF scale. *Miller* is therefore distinguished from the present case, which addresses ALJ Hockensmith's September 2016 decision, after the effective date of DSM V.

6

was engaged in pure speculation was simply wrong and unsupported by substantial evidence." *Id.*

Somewhat surprisingly, ALJ Hockensmith disagrees: "despite the Court's insistence that Dr. Patel's conclusions are not speculative, it is difficult to classify such statements as '… how often **do you anticipate** that [the claimant's' [sic] impairments or treatment would cause [the claimant] to be absent from work [emphasis added]' and '… **she is unlikely** to work 40 hours [per] week [emphasis added]' as anything but speculative. Dr. Patel was asked to theorize as to the frequency of such possibilities and, as such, his statements cannot be viewed as anything but speculation." (Doc. #6, *PageID* #127) (alterations in original).

But it was not the Court's insistence—it is the Court's Order. And, Social Security ALJs are not free to ignore Judicial Orders:

> In some Social Security cases, district courts will include detailed instructions concerning the scope of the remand and the issues to be addressed. In such cases, "[d]eviation from the court's remand order in subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson,* 490 U.S. 877, 886, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989). *See also Mefford v. Gardner,* 383 F.2d 748, 758 (6th Cir. 1967) (noting "the general rule that, on the remand of a case after appeal, it is the duty of the lower court, or the agency from which appeal is taken, to comply with the mandate of the court and to obey the directions therein without variation and without departing from such directions."). These cases stand for the proposition that the administrative law judge may not do anything expressly or impliedly in contradiction to the district court's remand order. These cases do not preclude the ALJ from acting in ways that go beyond, but are not inconsistent with, the district court's opinion.

*Hollins v. Massanari*, 49 F. App'x 533, 536 (6th Cir. 2002). ALJ Hockensmith's finding that Dr. Patel's "statements cannot be viewed as anything but speculation" is inconsistent with this Court's previous holding.

Further, Plaintiff's treatment records from pain specialists support Dr. Patel's opinion. For example, Plaintiff began treatment with Abdul Shahid, M.D., at the Dayton Pain and Spine Center in September 2014. Dr. Shahid noted, "The patient's underlying psychological dysfunction namely depression, anxiety, and nervousness is significantly modulating her pain perceptions." (Doc. #6, *PageID* #2518). And, Plaintiff has undergone extensive treatment for her back pain. Between January 2014 and May 2015, for example, she saw a pain specialist—Lisa Lichota, D.O., Angela M. Prickett, N.P., or Abdul Shahid, M.D.—approximately once every month for treatment of her severe pain. *Id.* at 1758-89, 2517-53.

Next, ALJ Hockensmith concludes, "Evidence documenting any impairment that would result in a 'marked' degree of limitation as described by Dr. Patel is lacking in this case and the claimant has not met the required burden of proof." *Id.* at 127. He notes "that Dr. Patel, when asked to describe clinical findings which demonstrate the severity of the claimant's mental impairment, relied upon the claimant's self-reported symptoms stating that the claimant '**reports** anxiety, mood swings, having crying spells...'" *Id.* at 127 (citation omitted).

Yet again, the ALJ's finding conflicts with the Court's Order:

> Dr. Patel identified many signs and symptoms Plaintiff exhibited. The ALJ assumes too much by finding that Plaintiff's signs and symptoms were based "only" on Dr.

8

> Patel's uncritical acceptance of Plaintiff's reports. It is equally or even more likely that Dr. Patel identified these findings based on his observations of Plaintiff during his treatment sessions with her. Symptoms such as Plaintiff's mood disturbances, emotional lability, anhedonia or pervasive loss of interests, paranoia or inappropriate suspiciousness, and hostility and irritability can be exhibited and identified by a psychiatrist free from an uncritical acceptance of subjective statements by Plaintiff. … Dr. Patel, moreover, indicated elsewhere that Plaintiff appeared anxious with mild lability and was paranoid when around people. Such observations were consistent with other signs and symptoms Dr. Patel identified, rather than an uncritical acceptance of her self-reported symptoms.

*Price Nju*, 2016 WL 74998, at *7 (internal citations omitted).

The ALJ further finds, "It is interesting to note that more recent mental health records indicate that the claimant was 'discharged by Dr. Patel' although the basis for his discontinuance of treatment is not evident. The claimant told another treating source that Dr. Patel did not 'want to do anything about my anxiety.'" (Doc. #6, *PageID* #127 (citing Exhibit 46F at 1 [Doc. #6, *PageID* #2137]). But this overlooks or ignores two significant pieces of evidence. First, Plaintiff said more than what ALJ Hockensmith indicates: "'I was discharged by Dr. Patel. Geodon made me very evil. He didn't want to do anything about my anxiety. I asked for a different case manager because I couldn't understand him, and I never even met my therapist until right before I was discharged.'" *Id.* at 2137. Second, a review of Dr. Patel's treatment notes from June 5, 2013 provide a reasonably clear explanation: After reporting negative side effects of her medication, Plaintiff "[s]tated undersigned is using her as a [guinea] pig trying all new meds. She started becoming more and more agitated, hostile and degrading undersigned. Stated she

9

does not know who made undersigned physician. … As she was quite upset and difficult to engage, undersigned requested staff nurse Virgina Neuhauser to be present during the rest of the interview. She was still angry, raising voice to undersigned, not providing answers to direct questions, accusing undersigned [of] not providing good care to patients, questioning about being medical director, etc….." *Id.* at 2508. Significantly, this evidence further supports Dr. Patel's opinion.

The ALJ then gives "the degree of limitation described by psychologist Dr. Flexman little weight" for "much the same reasons." *Id.* at 128. He speculates, "If the claimant maintains compliance with the proper use of prescribed medication and if she refrains from abusing drugs and alcohol, she *should* be quite capable of functioning in an effective manner (consistent with no worse than "moderate" limitation in mental functioning capabilities) as clearly indicated by both Dr. Patel and Dr. Kramer and as further supported by the most recent mental health treatment records." *Id.* at 128 (citations omitted) (emphasis added). But, ALJ Hockensmith is not a physician, and "an ALJ 'may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x. 181, 194 (6th Cir. 2009) (quoting, in part, *Meece v. Barnhart,* 192 F. App'x 456, 465 (6th Cir. 2006)) (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (stating "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings")). Neither Dr. Patel nor Dr. Flexman suggests that Plaintiff "should be quite capable of functioning …."

Plaintiff's recent mental health treatment records also support Dr. Patel's opinions. For example, after stopping treatment with Dr. Patel, Plaintiff presented to Giovanni Bonds, Ph.D. (Doc. #6, *PageID* #1719). At Plaintiff's second appointment, Dr. Bonds opined, "I think Linda needs to go to a mental health center so that she can have psychiatric treatment [and] the counseling [and] case management services she needs. The level of care she needs is beyond what this office can provide for her. …" *Id.* at 1718. This does not suggest, as ALJ Hockensmith found, that Plaintiff is "quite capable of functioning in an effective manner[.]" *Id.* at 128.

Plaintiff then began seeing Shirlann Knight, M.D. in August 2015. *Id.* at 2160. And, at first it appeared that she found a combination of medication that helped. Her insight and judgment remained limited, but, she was sleeping better and had less racing thoughts with Depakote. *Id.* at 2152-62. By March 2016, she was having trouble sleeping again and "her son thinks she is irritable." *Id.* at 2571. She began having racing thoughts, she was not sleeping, and she was depressed and irritable. *Id.* at 2573. Dr. Knight prescribed Abilify. *Id.* at 2574. When Plaintiff's symptoms continued, Dr. Knight increased her dose. *Id.* at 2576. Despite medication, Plaintiff's symptoms continued. *Id.* at 2579.

In contrast to Dr. Patel's opinion, the State agency record-reviewing psychologists, Dr. Orosz and Dr. Lewin, opined Plaintiff was far less limited by her impairments. They indicated Plaintiff had a mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of

decompensation. *Id.* at 235, 249. They opined Plaintiff was "limited to tasks without detailed instructions"; could have "[m]inimum contact with the general public"; "[c]ould interact with coworkers and supervisors on an occasional and superficial basis"; and "[c]ould adapt to a work environment that did not require frequent change or high production quotas." *Id.* at 239, 253-54.

Notably, Dr. Orosz reviewed Plaintiff's records in September 2011 and Dr. Lewin reviewed the records in January 2012. *Id.* at 239, 254. Thus, neither reviewed the entire record—and neither reviewed Dr. Patel's opinion. Nevertheless, ALJ Hockensmith relied on these opinions heavily—giving several of their opinions "great weight." *Id.* at 128-29. Although he relies substantially on their opinions to reject Dr. Patel's opinions, he did not explain his reasons for the weight he assigned. This constitutes error: "Nothing in the regulations indicates, or even suggests, that the administrative judge may decline to give the treating physician's medical opinion less than controlling weight simply because another physician has reached a contrary conclusion." *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009). The Commissioner, in the Motion for Remand, seems to acknowledge this error: "Upon receipt of the Court's order, the Appeals Council will instruct the Administrative Law Judge to reevaluate the opinions of the state agency reviewing psychologists as previously ordered by the Court …." (Doc. #12, *PageID* #2610).

However, upon review of the record as a whole, and given that Dr. Orosz and Dr. Lewin did not have the benefit of the opinions provided by Plaintiff's treating physician, their opinions are minimally probative. This is especially true when compared to Dr.

Patel's opinions and extensive treatment notes and the objective medical evidence presented which supports his opinions.

In light of the fact that Plaintiff filed for disability over six years ago, and in light of the strong evidence of record while contrary evidence is lacking, there is no just reason to further delay this matter by requiring additional administrative proceedings. *See Karger v. Comm'r of Soc. Sec.,* 414 F. App'x 739, 755 (6th Cir. 2011) (discussing *Mowery,* 771 F.2d at 973 (other citation omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *Wilder v. Apfel*, 153 F.3d 799, 804 (7th Cir. 1998); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992). Accordingly, a reversal of the ALJ's decision and a judicial award of benefits are warranted.

**IT IS THEREFORE ORDERED THAT**:

1. The Commissioner's Motion to Remand (Doc. #12) be GRANTED, in part, as to the requested remand to the Social Security Administration, and DENIED, in part, as to the request for further administrative proceedings;

2. The Commissioner's non-disability finding be reversed;

3. This matter be remanded to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for payment of benefits regarding Plaintiff Linda Price Nju's application for a period of disability and disability insurance benefits protectively filed on June 29, 2011 and application for supplemental security income protectively filed on March 1, 2012, and benefits be awarded to Plaintiff consistent with the Social Security Act; and

4. The case is terminated on the docket of this Court.

Date: October 27, 2017            *s/Sharon L. Ovington*
                                                             Sharon L. Ovington
                                                             United States Magistrate Judge